**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Chief Judge Marcia S. Krieger**

Civil Action No. 16-cv-00299-MSK-KMT

SYLVESTER CUEVAS,

     Plaintiff,

v.

UNITED STATES OF AMERICA;
J. RODRIGUEZ, C/O (ADX);
MUNOZ, C/O (ADX);
LOZANO, C/O (ADX);
HEWITT, Case Manager (ADX);
MARSHALL, C/O (ADX);
PERKINS, C/O (ADX);
GOMEZ, C/O (ADX);
MCAVOY, C/O (ADX);
LEE, C/O (ADX);
MANES, C/O (ADX);
MANNESS, C/O (ADX);
WADAS, C/O (ADX);
HUMPHRIES, C/O (ADX);
ROBINSON, C/O (ADX);
BERG, C/O (ADX); and
PETERS, C/O (ADX);

     Defendants.

---

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION**
**FOR SUMMARY JUDGMENT**

---

     **THIS MATTER** comes before the Court pursuant to all Defendants'[1] Motion for

Summary Judgment **(# 175),** Mr. Cuevas' response **(# 182, 183),** and the Defendants' reply (#

---

[1]      Defendant Lee is not listed as being one of the movants in the introductory paragraph of the Defendants' motion. Docket # 33 appears to indicate that Defendant Lee was never served with process in this case, and nothing indicates that Mr. Cuevas has sought to cure that defect.

**187**).  There are an array of additional collateral motions that relate to the summary judgment motion: the parties various Motions to Restrict Access (**# 177, 181, 192**) to various filings; Mr. Cuevas' Motion for Appointment of Counsel (**# 178**); Mr. Cuevas' Motion for a Stay of Decision (**# 189**) on the Defendants' motion, and the Defendants' response (**# 194**); and Mr. Ceuvas' Motion for Leave to File a Surreply (**# 191, 193**), and the Defendants' response (**# 195**). The Court addresses those collateral motions at the conclusion of this Order.

## FACTS

The Court summarizes preliminary facts here and elaborates as appropriate in its analysis. Mr. Cuevas is an inmate in the custody of the Federal Bureau of Prisons ("BOP").  During the pertinent times herein, Mr. Cuevas was housed at the BOP's Administrative Maximum ("ADX") facility in Florence, Colorado.  He alleges that, at various times, each of the individual Defendants – ADX corrections officers – informed Mr. Cuevas' fellow inmates of certain sensitive information[2] about Mr. Cuevas or his crimes, with the intention that those inmates would thereafter attempt to retaliate violently against Mr. Cuevas because of the information they had learned.

---

The Court orders Mr. Cuevas to show cause, within 14 days of the date of this Order, why the claims against Defendant Lee should not be dismissed pursuant to Fed. R. Civ. P. 4(m).

[2]      As it did in its prior substantive ruling, the Court remains purposefully vague in describing the nature of the information about Mr. Cuevas that is at issue here.  *See Docket* #134 at n. 1.  It is sufficient to describe the information in question as "sensitive information," without needing to disclose its particular nature.  Doing so allows the maximum amount of public access to this Order and other filings in this case without further disseminating the particular information at issue.  Where the Court cites to precedent relevant to this case, it does so because of the analysis used in those cases, not necessarily because the type of information disclosed in those cases is factually similar to the sensitive information in this case.

Based on these allegations, Mr. Cuevas commenced the instant action *pro se*.[3] At this point, Mr. Cuevas asserts the following claims: (i) a claim against each individual Defendant under *Bivens*, asserting that the Defendant violated his rights under the 8th Amendment to the U.S. Constitution's guarantee against Cruel and Unusual Punishment; and (ii) claims against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*, sounding in assault, negligence, and intentional infliction of emotional distress.

The Defendants now move **(# 175)** for summary judgment on the claims against them, arguing that: (i) no private right of action exists under *Bivens* for "failure to protect" claims of this type in the wake of *Ziglar v. Abbasi*, 137 S.Ct. 1483 (2017); (ii) to the extent such a right exists, the Defendants are entitled to qualified immunity because that right is not clearly established; (iii) Mr. Cuevas has not come forward with evidence that each Defendant personally participated in the constitutional violation; (iv) Mr. Cuevas has not shown that the actions he alleges constitute an 8th Amendment violation; (v) as to Defendant Robinson, Mr. Cuevas' claim is untimely; (vi) any claims by Mr. Cuevas arising after August 2014 are not exhausted; (vii) Mr. Cuevas' FTCA claims are not properly exhausted; and (viii) Mr. Cuevas lacks sufficient evidence to prove each of his tort claims.

## ANALYSIS

### A. Standard of review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Substantive law governs

---

[3] Mindful of Mr. Cuevas' *pro se* status, the Court construes his pleadings liberally. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972).

what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(c)(1)(A). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent

evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## B. 8th Amendment claim

The basic contours of Mr. Cuveas' 8th Amendment claim are well-settled. The Supreme Court has long recognized that a prison official's deliberate indifference to a substantial risk of inmate-on-inmate violence violates the 8th Amendment. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). Gratuitously allowing the beating of one prisoner by another serves no legitimate penological objective. Typically, to establish an 8th Amendment claim of this type, the inmate must show that he faced an objectively substantial risk of serious harm and that the defendant had a subjective knowledge of that risk by nevertheless recklessly disregarded it. *Id.* at 834. The 10th Circuit has specifically recognized that, where a corrections officer labels an inmate as a "snitch," communicates that label to other inmates, and does so "aware of the obvious danger associated with a reputation as a snitch," an 8th Amendment violation is clearly established. *Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001).

The Defendants attack Mr. Cuevas' 8th Amendment claim from a variety of angles, each of which the Court discusses in turn.

### 1. Availability of *Bivens* remedy

Since *Bivens v. Six Unknown Federal Narcotics Agents*, 304 U.S. 388 (1971), courts have recognized the existence of a judicially-created remedy by which persons deprived of constitutional rights by the actions of federal agents may sue those agents for money damages. The Supreme Court has expressly recognized *Bivens* claims in three specific contexts: (i) violations of the 4th Amendment's protections against unreasonable searches and seizures; (ii) gender discrimination in public employment in violation of the 5th Amendment's Due Process

clause; and (iii) violation of the 8th Amendment arising from a prison official's deliberate indifference to an inmate's medical needs.  *See generally Ziglar*, 137 S.Ct. at 1854 (citing cases). Lower courts, however, extended *Bivens* to a much broader range of constitutional deprivations.

Over time, the Supreme Court has signaled a retreat from the notion of a broadly-available *Bivens* remedy, instead suggesting that the decision as to whether or not a damages remedy against federal officials should lie in a given context is one to be made by Congress, not the courts.  Thus, in *Ziglar*, the Supreme Court formally announced that, hereafter, the *Bivens* remedy would be "disfavored" and would now only be recognized in limited new contexts.

*Ziglar* sets forth a complex analysis that the Court must apply in deciding whether to recognize a *Bivens* claim in a context beyond the three already approved by the Supreme Court. First, the Court must consider whether the case arises in a "new context," by considering whether the case is "different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court."  137 S.Ct. at 1859.  Numerous criteria might distinguish an existing case from past cases, such as the rank of the officials involved, the generality or specificity of the official action, the extent of judicial guidance on the issue confronted by the officer, and so on.  If the case is indeed a "new context," the Court turns to the question of whether there are any "special factors counselling hesitation [in the creation of new remedies] in the absence of affirmative action by Congress."  The Supreme Court declined to specifically itemize these special factors, but has indicated that they generally bear on the question of "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing an action to proceed."  Among the factors that the Court considered in *Ziglar* were: (i) whether the claim is brought against the official for his or her own acts, or for others; (ii) whether the claims "call into question the formulation and implementation of a general policy" of the official's

agency; (iii) whether the litigation process would touch upon or implicate the discussion and deliberations that led to the policy in question; (iv) whether the action challenges "standard" agency operations or major elements of a broader government response to an unusual situation; (v) whether separation-of-powers concerns are present; (vi) whether injunctive relief would be a sufficient remedy in the absence of money damages; and (vii) whether Congress has created an "alternative existing process for protecting" the injured party's interests, among others.

The Court need not belabor the *Zigler* analysis here. Given *Zigler*'s nuanced distinguishing of *Carlson v. Green*, 446 U.S. 14 (1980) (recognizing a *Bivens* claim under the 8th Amendment for a state prison's deliberate indifference to an inmate's medical need), from *Correctional Services Corp. v. Malesko*, 534 U.S. 61 (2001) (refusing to recognize a *Bivens* claim under the 8th Amendment for a private prison's deliberate indifference to an inmate's medical need), this Court is confident that the instant case – in which the 8th Amendment is invoked in a non-medical scenario – would also be considered a "new context" from that of *Carlson*. The Court therefore turns to the question of whether there are any "special factors counseling hesitation" in recognizing a *Bivens* remedy here. Although this Court is cognizant of *Zigler*'s reluctance to approve *Bivens* claims in new contexts, the Court finds no factors here that would caution against adopting a *Bivens* remedy in this particular situation. Here, Mr. Cuevas brings claims against the particular individual officers who intentionally disclosed the sensitive information about him to his fellow inmates; this is not a situation in which the Defendants are named in a vicarious or representative or policymaking capacity. The Court does not understand the Defendants to be arguing that they believed that disclosing the sensitive information about Mr. Cuevas to other inmates was furthering some specific policy of the BOP that called for doing so. The challenged actions are ordinary incidences of day-to-day prison operations, for which

there is law clearly establishing that the practice is unconstitutional, such that there is no risk that this litigation will tread on complex matters of BOP policymaking.  It does not appear that anything other than money damages will remedy Mr. Cuevas' situation: although he states an intention to seek unspecified  injunctive relief in addition to money damages, it is difficult to conceive of how injunctive relief of any kind could be effective in this situation.  A directive to the Defendants to "stop disclosing the sensitive information!" cannot suffice to undo the dissemination of the sensitive information that has already occurred or the damage to Mr. Cuevas' name and reputation that have resulted.  In *Zigler*'s parlance, this, like *Bivens* itself, is a case of "damages or nothing."  137 S.Ct. at 1862.

That leaves only the question of whether Mr. Cuevas has a Congressionally-created alternative remedy for vindicating his claims.  The Defendants suggest two such remedies: resort to the BOP's internal Administrative Remedy program and a suit for injunctive relief.[4]  For reasons set forth above, the Court rejects the latter out-of-hand: injunctive relief is simply inadequate to un-ring this particular bell.  As to the Administrative Remedy program, the Defendants have not pointed to the particular provision of that program they contend would offer relief to Mr. Cuevas; indeed, they have not cited to the Administrative Remedy program's terms at all in this portion of their argument.  28 C.F.R. § 542.10 *et seq.*  It is by no means clear that Mr. Cuevas <u>could</u> recover money damages under the Administrative Remedy program.  Even if he could, it appears that the BOP has already decided not to grant him such relief, as Mr. Cuevas exhausted that program, without success, before commencing this suit.

Accordingly, this Court sees no reason why a *Bivens* remedy should not be available to an individual like Mr. Cuevas, who sues individual officers for violating his 8th Amendment

---

[4]        The Defendants have not argued that the FTCA provides an alternative remedy, and thus, the Court does not consider that question.

results by purposefully disclosing sensitive information about him to other inmates so as to induce them towards violence against Mr. Cuevas. Such a claim is so clearly-established and directed at the individual actions of rank-and-file prison officials that there is no reason to defer to Congress' decisionmaking (and the concomitant inertia) in order to decide whether a damages remedy should lie. Even in the post-*Zigler* world, this case presents an appropriate one for recognition of *Bivens*-type liability.

## 2. Qualified immunity

The Defendants have raised the defense of qualified immunity. When that defense is raised, the burden shifts to Mr. Cuevas to establish two prongs: (i) that he has adequately asserted a violation of a constitutional right, and (ii) the contours of that right were "clearly established" by existing Supreme Court or 10th Circuit precedent (or the weight of authority from other circuits) at the time of the events herein. *T.D. v. Patton,* 868 F.3d 1209, 1220 (10th Cir. 2017).

The Court turns to the first prong: the sufficiency of the claim asserted by Mr. Cuevas. The Defendants argue, at some length, that they did not disclose any sensitive information about Mr. Cuevas, or perform any of the other acts he accuses them of doing. In support of these denials, they rely entirely on their own affidavits. But, as noted above, on summary judgment, the Court is required to resolve all disputed facts in the light most favorable to Mr. Cuevas, and affidavits from the Defendants contradicting evidence tendered by Mr. Cuevas simply present issues of fact that require trial. Mr. Cuevas has tendered his own declaration, as well as declarations from several inmates, that attest to the following acts (among others):

• Per the declaration of inmate Dawane Arthr Mallett, Defendants Manes, Rodriguez, Munoz, Gomez, and Humphries each personally gave him the sensitive information about Mr. Cuevas.

• Per the declaration of inmate Q. Ili-yaan El-Haakeem Farrakhan-Mohammed, Defendant Lozano "asked why I talk with [Mr. Cuevas]" and proceeded to disclose the sensitive information to him. Mr. Farrakhan-Mohammed also alleges that Defendant Rodriguez disclosed similar information to him about Mr. Cuevas.

• Per the declaration of inmate Jerry Lee Bustos, Mr. Lozano disclosed the sensitive information about Mr. Cuevas to him.

• Mr. Cuevas provided his own declaration[5] in support of his summary judgment response. *Docket* # 182 at 96-106. This declaration is slightly more difficult to parse, as it is not always clear when Mr. Cuevas is attesting to matters within the scope of his personal knowledge – that is, relating actions by the Defendants that he personally witnessed – and when he is relating events that other inmates reported witnessing. The latter evidence would be hearsay, that is, a statement ("Inmate X told me that Defendant Y told him this sensitive information about Mr. Cuevas") made by a witness (Inmate X), outside of court, and offered by Mr. Cuevas to prove the truth of the matter asserted (that Defendant Y did indeed make such a statement). A party may not rely on hearsay evidence to overcome a motion for summary judgment. *See Brown v. Perez*, 835 F.3d 1223, 1232 (10th Cir. 2016). Nevertheless, the allegations of Mr. Cuevas' declaration assist the Court in determining the particular actions Mr. Cuevas attributes to the Defendants not addressed by the other inmates' declarations set forth above.

As to Defendant Robinson, Mr. Cuevas relates a single instance in 2012, in which Mr. Robinson "logged on to the computer to access [Mr. Cuevas'] file," and later "made statements to the other underscore{officers} present." (Emphasis added.) Mr. Cuevas is careful to explain that "the fact that Robinson read the information in the computer and made the statement[s] does not violate plaintiff's rights; rather, what he did after that did." It is not clear what other acts Mr. Cuevas accuses Mr. Robinson of taking.

Mr. Cuevas relates an instance in May 2013 in which Defendants Wadas, Marshall, and Lee told the sensitive information to other inmates. Mr. Cuevas learned about this event from unnamed inmates in August 2014. Because this statement is hearsay, the Court disregards it.

Mr. Cuevas cites an instance in which Defendant Berg purposefully gave Mr. Cuevas' mail to another inmate. Mr. Cuevas and Mr. Berg then had a "verbal altercation" about it. Mr. Cuevas does not allege that the mail itself disclosed the sensitive information or that Mr. Berg took any other actions to disclose the sensitive information to other inmates.

Mr. Cuevas alleges that Defendant Peters "was working with Defendant Rodriguez when" Defendant Rodriguez was actively disclosing the sensitive information to other inmates, and that Defendant Peters "did not stop Defendant Rodriguez from committing" those acts. The Court thus understands Mr. Cuevas' claim against Defendant Peters to be that Defendant Peters was aware of Defendant Rodriguez committing an unconstitutional act and that Defendant Peters condoned or acquiesced in that act by failing to stop it. It is not entirely clear whether Mr.

---

[5]    Mr. Cuevas' brief also makes certain assertions of fact that are not found within his declaration. The Court addresses those additional allegations in the notes herein.

Cuevas had personal knowledge of these events or whether he is repeating information he learned from others. The Court will infer that Mr. Cuevas witnessed these events firsthand: he describes them occurring in D-Unit at a time when Mr. Cuevas was housed in that same unit.

Similarly, Mr. Cuevas asserts that Mr. Manes was disclosing sensitive information about him to other inmates and that Defendant Perkins was present, yet "turned a blind eye to Manes' misconduct." The Court understands these events to have occurred during a time when Mr. Cuevas was having "several verbal altercations" with Mr. Manes, such that Mr. Cuevas is relating these events from his personal knowledge. (Mr. Cuevas also states that "inmates advised me that Perkins was making the same disclosures," but the Court disregards the statements of these unnamed inmates as hearsay.)

Finally, Mr. Cuevas states that Defendant Hewitt accessed Mr. Cuevas' files and disclosed the information in question to other unnamed Defendants. Mr. Cuevas also alleges that Mr. Hewitt "disclosed the information to an inmate who then advised me of the same." Mr. Cuevas is clear that Mr. Hewitt never made reference to the sensitive information in Mr. Cuevas' presence, indicating that Mr. Cuevas lacks firsthand knowledge of Mr. Hewitt's statements to the inmate.

Taking this evidence in the light most favorable to Mr. Cuevas, the Court determines as follows. As to Mr. Manes, Rodriguez, Munoz, Gomez, Humphries, and Lozano, there is competent evidence that these Defendants specifically disclosed the sensitive information about Mr. Cuevas to other inmates. There is also evidence in the record to suggest that these Defendants did so with the specific subjective intention that the inmates receiving that information would thereafter inflict violence upon Mr. Cuevas. For example, Mr. Mallett's affidavit states that the Defendants he identified acted "in order to instigate inmates including myself to cause Inmate Cuevas serious harm." Accordingly, the Court finds that Mr. Cuevas has come forward with sufficient evidence to state an 8th Amendment claim against Defendants Manes, Rodriguez, Munoz, Gomez, Humphries, and Lozano.

As to Mr. Peters and Mr. Perkins, Mr. Cuevas has not come forward with competent evidence that these Defendants disclosed any sensitive information about Mr. Cuevas to other inmates, but he does allege that they were present when other Defendants did so and that Mr. Peters and Mr. Perkins did nothing to stop it. Courts recognize that officials "have an affirmative

duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Weigel v. Broad*, 544 F.3d 1143, 1153 n. 4 (10th Cir. 2008). If an official is present when a constitutional violation is occurring, knows or has reason to know that the violation is occurring, and has a realistic opportunity to intervene to prevent the harm from occurring, he or she is obligated to do so. *Id.* Drawing all reasonable inferences in favor of Mr. Cuevas, the Court will assume that Mr. Peters and Mr. Perkins had the ability to stop their co-workers from further disseminating the information about Mr. Cuevas to additional inmates, but that they failed to do so. This is sufficient to state a claim against Mr. Peters and Mr. Perkins sounding in acquiescence to an 8th Amendment violation.

Mr. Cuevas accuses Mr. Robinson and Mr. Hewitt only of accessing BOP computer files about him and conveying information – presumably, the sensitive information at issue here – to other Defendants.[6] Mr. Cuevas does not allege that Mr. Robinson or Mr. Hewitt specifically did so with the intention or expectation that the other Defendants would disclose the information to inmates in an attempt to harm Mr. Cuevas, and the Court will not assume a nefarious intent when innocent motivations or carelessness are equally (if not more) plausible from the record. Thus, the Court finds that Mr. Cuevas has not adequately alleged an 8th Amendment claim against Mr. Robinson or Mr. Hewitt.

The remaining Defendants –Berg, Lee, Wadas, Marshall, Manness, and McAvoy – are not the subjects of competent evidence demonstrating that they personally participated in any

---

[6]     In Mr. Cuevas' brief, he makes generalized statements that he "disputes" Mr. Hewitt's denial of passing on the sensitive information to inmates, and points the Court to "plaintiff's verified complaint" as evidence. The Court notes that, in Mr. Cuevas' deposition, he states that although he "know[s Mr. Hewitt] told other inmates [the sensitive information]," but admits that "I don't have proof that he did it. . . My claim is that he did, but I don't have proof of it." The Court finds these allegations insufficient to demonstrate a genuine dispute of fact as to Mr. Hewitt's involvement in disclosing the information to other inmates.

disclosure of sensitive information about Mr. Cuevas to other inmates.[7] Thus, Mr. Cuevas has not stated a claim against these Defendants.

Accordingly, the Court grants summary judgment to Defendants Robinson, Hewitt, Berg, Lee, Wadas, Marshall, Manness, and McAvoy, and finds that Mr. Cuevas has adequately stated an 8th Amendment claim against Defendants Manes, Rodriguez, Munoz, Gomez, Humphries, Lozano, Perkins, and Peters.

The Court then turns to the second prong of the qualified immunity analysis, examining whether the constitutional deprivation claimed by Mr. Ceuvas was "clearly established." As noted above, the "clearly established" analysis examines whether there was existed precedent, at the time of the challenged events, that recognized a constitutional violation in similar circumstances. Courts are required to conduct the "clearly established" analysis at a "high degree of specificity," rather than in generalities. *District of Columbia v. Wesby*, 138 S.Ct. 577, 590 (2018). However, the specificity requirement is not so exacting that "the very action in question [must have] previously been held unlawful." *Ziglar*, 137 S.Ct. at 1866.

In *Benefield*, the 10th Circuit cited prior precedent in which it "specifically held that labeling an inmate a snitch . . . constitutes deliberate indifference to the safety of that inmate,"

---

[7]  Mr. Cuevas' brief asserts only that unspecified portions of his verified complaint establish that Mr. Marshall, Wadas, Robinson, and Berg informed inmates of the sensitive information. A party opposing summary judgment may not rest on allegations in his pleadings, but must come forward with specific evidence to support those contentions. *BancOklahoma Mortgage Group v. Capital Title Co.*, 194 F.3d 1089, 1097-98 (10th Cir. 1999).
  Mr. Cuevas' brief concedes that there may be some uncertainty as to whether the Mr. McAvoy the Defendants identify "might not be the same McEvoy or McAvoy whom Plaintiff has asserted the claims against." In any event, even Mr. Cuevas' brief makes no specific allegations regarding the conduct of (any) Mr. McAvoy.
  Mr. Cuevas' brief makes a passing comment that Mr. Manness "did in fact fail to stop other Defendants from committing the complained of acts when they did them in his presence," but does not provide any further details about the circumstances in which this occurred. The Court therefore rejects this allegation as insufficiently conclusory and not based on Mr. Cuevas' personal knowledge.

and further declared that "this issue was well-established" as of the defendants' conduct in 1998. 241 F.3d at 1271; *see also Brown v. Narvais*, 265 Fed.Appx. 734, 736 (10th Cir. 2008). The Defendants here do not dispute that *Benefield* establishes, as a general proposition, that officials purposefully disclosing sensitive information about an inmate to other inmates constitutes a clearly-established violation of the 8th Amendment. However, they argue that *Benefield* is not applicable in this context, because of the peculiar security configurations that exist at ADX. Greatly summarized, their argument is that because inmates at ADX never have physical contact with fellow inmates, the risk of inmate-on-inmate violence contemplated by *Benefield* is not present at ADX. The Defendants argue that, in the absence of precedent extending *Benefield* to the ADX context, the 8th Amendment violation alleged by Mr. Cuevas here is not "clearly established" by the factually-distinguishable holding in *Benefield*.

The Court has previously rejected this argument in its prior ruling, and does so again for several reasons. First, there is a genuine dispute of fact as to whether the circumstances at ADX are as secure as the Defendants assert. Although the Defendants contend that there is no way in which a fellow inmate could physically attack Mr. Cuevas, several items of evidence in the record suggest that Mr. Cuevas' physical safety is not so assured. In his declaration, Mr. Mallett recites an offer made to him by Defendant Rodriguez, who suggested that ADX staff "would leave the recreation cage door open so I could get out of my cage when they were escorting Cuevas to or from rec and kill him. They said that they would not intervene." Thus, even if ADX's procedures were flawlessly designed to protect Mr. Cuevas from contact with other inmates, there is evidence that the Defendants themselves could and would engage in conduct that would purposefully undermine those designs and place Mr. Cuevas at risk of harm. There is also indirect evidence that suggests that, ADX's security procedures notwithstanding, special

efforts are made by ADX staff to segregate certain inmates from one another. As the Defendants' brief recites, "an inmate with a documented separation from another inmate will not be placed on the same range of a housing unit and, if space permits, the separated inmates will not be assigned to the same housing unit." Were ADX as secure as the Defendants represent, and the inmates so assuredly untouchable by their peers, there would be little reason to bother separating troublesome pairs or groups – certainly, no harm could come of housing them together.

Moreover, there is ample evidence that, despite ADX's security protocols, there are opportunities for inmates to assault one another during routine operations. The Defendants themselves cite to a statement from an inmate that "It's normal practice for inmates to spit [at] and throw feces on [ ] the inmates they want moved from the range." It is undisputed that a fellow inmate threw snowballs and spit at Mr. Cuevas during a recreation session,[8] and although the Defendants insist that fencing between the recreation pens prevented anything from hitting Mr. Cuevas during that incident, the Defendants admit that Mr. Cuevas was sent to Health Services for an assessment following the incident, demonstrating staff's concerns that Mr. Cuevas' <u>could</u> have been injured by that assault. Mr. Cuevas' own filings assert that, on one occasion, an inmate "was stabbed through the recreational cage by another inmate," and that "inmates [have] assaulted others with blow darts-type weapons laced with feces." Thus, even when ADX security is functioning properly, there remains the risk that inmates targeted for

---

[8] The Defendants point out that, by Mr. Cuevas' own admission, this incident was not related to the sensitive information that was disclosed about him, but rather, a conflict about whether Mr. Cuevas would participate in passing along communications between inmates within his housing unit. The Court considers this incident only to demonstrate that inmates <u>can</u> assault each other during recreation periods, regardless of the <u>reasons</u> that trigger the assault.

retaliation, like Mr. Cuevas, may be subjected to physical and projectile assaults from fellow inmates.

Finally, even assuming that security at ADX is so impregnable that Mr. Cuevas was completely free from harm while he was housed there, the record reflects that ADX is not a permanent destination for most prisoners. Indeed, during the lifespan of this litigation, Mr. Cuevas was transferred from ADX to a less-restrictive BOP facility in Atlanta. Other prisoners who were once housed at ADX, including, ostensibly, prisoners who learned of the sensitive information about Mr. Cuevas from the Defendants, have also been transferred out of ADX, allowing the sensitive information about Mr. Cuevas to travel to other facilities as well. Mr. Cuevas states that, since arriving in Atlanta, he has been confronted by fellow inmates who are aware of his status because of the disclosures the Defendants made during his time at ADX, and that he is now at risk of assault there as well.[9] Thus, the mere fact that ADX is a more secure facility than most (or indeed, all) other prisons does not suggest that, there, inmates can be induced to retaliate against one another without any adverse consequences whatsoever. As such, there is no basis to conclude that the rule clearly established in *Benefield* applies with any less force to ADX. Accordingly, the Court finds that *Benefield* clearly establishes the existence of the constitutional violation in this context as well, and the remaining Defendants' qualified immunity argument is without merit.

### 3. Exhaustion

Finally, the Defendants suggest that, to the extent Mr. Cuevas relies upon events occurring after August 2014, his 8th Amendment claims are unexhausted. Failure to exhaust is

---

[9]     Mr. Cuevas also alleges that at least one fellow inmate at ADX intimated that retaliation against Mr. Cuevas could take the form of harming Mr. Cuevas' family outside of prison. This, too, is a potential consequence of the Defendants' actions that all of ADX's security measures cannot ameliorate.

an affirmative defense on which the Defendants bear the burden of proof. *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011). The Defendants have come forward with evidence that Mr. Cuevas did not file any relevant administrative grievances after August 2014, but, notably, they have not identified what particular claims or assertions by Mr. Cuevas arose after August 2014. The Court finds that such an argument fails to discharge the Defendants' obligations under Fed. R. Civ. P. 56(c). The rule requires a party asserting that there is no genuine dispute as to a particular fact to cite to the particular facts in the record that demonstrate the absence of such dispute. Here, the Defendants have had the opportunity to depose Mr. Cuevas and otherwise discover the particular events that underlie his claims and to ascertain (specifically or generally) the dates on which those events occurred. Because the Defendants have not come forward with evidence establishing that those dates occurred after August 2014, the Court finds that the Defendants have not shown that they are entitled to summary judgment on their affirmative defense of failure to exhaust as to any of Mr. Cuevas' claims.

## C. FTCA claims

Finally, the United States, as the sole Defendant on Mr. Cuevas' FTCA claims, moves for summary judgment on each of those claims for the reasons set forth below.

### 1. Failure to exhaust

The United States contends that Mr. Cuevas failed to adequately exhaust his FTCA claims by timely presenting them pursuant to 28 U.S.C. § 2675(a). That statute provides that no FTCA claim may be brought "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing." (If no denial is issued within six months of the claim being filed, the statute presumes the claim to have been denied.) The failure to present the claim as required constitutes a

jurisdictional defect that cannot be waived or cured by conduct during the litigation. *Gabriel v. U.S.*, 683 Fed.Appx. 671, 672 (10th Cir. 2017).

The United States contends that Mr. Cuevas did not make any tort claim on the BOP relating to the FTCA claims in this case. It notes that it maintains a computerized recordkeeping system to log tort claims presented to the agency and states that a search of that system reveals no claim presented by Mr. Cuevas. In response, Mr. Cuevas tenders: (i) an SF-95 (the form used for making FTCA presentments), dated July 1, 2015, addressed to the BOP's Washington, D.C. office; (ii) a July 27, 2015 message by Mr. Cuevas to a Mr. Wyche (an ADX counselor), requesting that Mr. Wyche verify that Mr. Cuevas tendered a document to Mr. Wyche for mailing to the "F.B.O.P./Tort Claims Dept." in Washington, D.C., and initials that would appear to be Mr. Wyche's verifying Mr. Cuevas' request on July 29, 2015; and (iii) a certified mail receipt for a document sent from Denver, Colorado on July 30, 2015 and received in Washington, D.C. on August 3, 2015. Although the United States alleges that Mr. Cuevas' presentment should have been sent to a BOP office in Kansas, Mr. Cuevas states (and the United States' evidence effectively confirms) that he has sent FTCA presentments to the BOP office in Washington, D.C. in the past and that the BOP accepted those presentments.

Under these circumstances, the Court finds that there is a genuine dispute of fact as to whether Mr. Cuevas adequately presented his FTCA claims to the BOP, such that an evidentiary hearing on that question is warranted. The Court will conduct that hearing at or about the time of trial of the remaining claims in this matter. Accordingly, the Court denies the United States' motion for summary judgment on this ground.

2. Sufficiency of the assault claim

The FTCA constitute a limited waiver of the United States' sovereign immunity in certain circumstances. Although that waiver expressly does not extend to claims for assault, the U.S. has waived its sovereign immunity for claims arising from assaults allegedly committed by "law enforcement officers." 28 U.S.C. § 2680(h). The Court understands the United States here to concede that the individual Defendants are "law enforcement officers" for purposes of this provision, and thus, the Court finds that the U.S. has waived its sovereign immunity for purposes of this claim. *See generally Millbrook v. U.S.*, 569 U.S. 50 (2013) (approving FTCA assault claim against BOP officials)

Claims under the FTCA follow the tort law of the state where the events occurred. 28 U.S.C. § 1346(b)(1); *Abreu v. U.S.*, 468 F.3d 20, 23 (1st Cir. 2006). The elements of the tort of assault in Colorado are: (i) that the defendant intended to make physical contact with the defendant or place the defendant in apprehension of immediate physical contact, (ii) the plaintiff was placed in such apprehension, and (iii) the contact was offensive. *O'Hayre v. Board of Education*, 109 F.Supp.2d 1284, 1296 (D.Colo. 2000). Here, there is no evidence cited by Mr. Cuevas that suggests that the Defendants ever physically threatened him directly – that is, that the Defendants themselves threatened to attack Mr. Cuevas. Rather, all evidence demonstrates that the Defendants spread the sensitive information in order to induce Mr. Cuevas' fellow inmates to attack him at an indeterminate point in the future. Because the anticipated physical contact with Mr. Cuevas that was being induced by the Defendants' action were to happen in the indeterminate future, Mr. Cuevas has failed to adequately allege facts showing that such contact was expected to occur "immediate[ly]" upon the Defendants' actions of disclosing the sensitive information. As explained in the Restatement (Second) of Torts, § 29, comment b, "[t]he apprehension created must be one of imminent contact, as distinguished from any contact in the

future."  Because Mr. Cuevas has not come forward with facts showing that the Defendants were attempting to induce other inmates to attack Mr. Cuevas immediately upon hearing the sensistive information, the United States is entitled to summary judgment on Mr. Cuevas' FTCA assault claim.

### 3. Sufficiency of the negligence claim

To establish a tort claim for negligence under Colorado law, Mr. Cuevas must adduce facts showing: (i) the existence of a duty owed by the Defendants to Mr. Cuevas, (ii) the Defendants' breach of that duty, (iii) a causal connection between that breach and injuries suffered by Mr. Cuevas, and (iv) resultant damages.  *Hyler v. Geo-Seis Helicopters, Inc.,* 269 F.3d 1190, 1192 (10th Cir. 2001).

The Defendants argue that, under Colorado law, "simple negligence cannot provide the basis for the recovery of damages for mental or emotional suffering, unless such negligence has resulted either in physical injury or in the creation of a reasonable risk of bodily harm."  *Citing Williams v. Cont'l Airlines, Inc.,* 943 P.2d 10, 16 (Colo. App. 1996).  The Defendants go on to argue that because Mr. Cuevas was never actually harmed physically by a fellow inmate, he cannot show that he faced a "risk of bodily harm."  Colorado law requires that a plaintiff asserting negligence have suffered from physical harm: "negligence is not actionable in Colorado unless it results in *physical damage* to persons or property"; fear of possible future injuries from a latently-dangerous condition do not suffice.  *Adams-Arapahoe School Dist. v. GAF Corp.*, 959 F.2d 866, 871 (10th Cir. 1992) (emphasis in original).  Mr. Cuevas' argument in response does not allege that he suffered any actual physical injury as a result of the Defendants' conduct, and reaffirms that "it is the fear of the reasonable risk of bodily harm plaintiff experiences because of Defendants' unlawful actions that establishes a clear negligence."  (Emphasis in original).

Because Colorado does not recognize the tort of negligence in the absence of an actual physical injury to the plaintiff, the Defendants are entitled to summary judgment on Mr. Cuevas' FTCA negligence claim.

4. <u>Intentional infliction of emotional distress claim</u>

The United States proffers two arguments with regard to Mr. Cuevas' FTCA claim premised on intentional infliction of emotional distress. The first – that Mr. Cuevas' has not identified conduct that is sufficiently outrageous – the Court rejects out of hand. As *Benefield* makes clear, the conduct Defendants are alleged to engaged is undoubtedly outrageous and intolerable.

The United States also argues that, pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(e), Mr. Cuevas is prevented from bringing a claim "for mental or emotional injury suffered while in custody without a prior showing of physical injury." The Court need not address the question at this time. The PLRA's "physical injury" requirement is, fundamentally, a restriction on an inmate's ability to recover compensatory damages; the absence of a physical injury does not prevent suit for, for example, nominal damages. *McDaniels v. McKinna*, 96 Fed.Appx. 575, 581 (10th Cir. 2004). This Court sees no reason why, assuming Mr. Cuevas can otherwise establish the elements of intentional infliction of emotional distress, he could not recover at least nominal damages from the United States. Accordingly, the application of the PLRA does not result in the entry of summary judgment for the United States on Mr. Cuevas' FTCA claim for intentional infliction of emotional distress, and the Court will take up the appropriate measure of damages on that claim at trial during the Charging Conference.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment (**# 175**) is **GRANTED IN PART**, insofar as judgment shall enter (at the conclusion of this case) in favor of Defendants Robinson, Hewitt, Berg, Lee, Wadas, Marshall, Manness, and McAvoy on all claims, and **DENIED IN PART**, insofar as Mr. Cuevas has adequately demonstrated triable claims under the 8th Amendment and the Federal Tort Claims Act sounding in intentional infliction of emotional distress against Defendants Manes, Rodriguez, Munoz, Gomez, Humphries, Lozano, Perkins, and Peters.

The Court **GRANTS** the various Motions to Restrict Access (**# 177, 181, 192**), and the provisional restrictions placed on the affected filings shall remain in place. Because this matter is proceeding to trial, the Court finds merit in Mr. Cuevas' Motion for Appointment of Counsel (**# 178**) and the Court **GRANTS** that motion. The Clerk of the Court shall attempt to locate counsel who will represent Mr. Cuevas at trial on a *pro bono* basis (although Mr. Cuevas remains responsible for all aspects of this case unless and until such counsel enters an appearance). Mr. Cuevas' Motion for a Stay of Decision (**# 189**) on the summary judgment motion is **DENIED AS MOOT**, as is Mr. Cuevas' Motion for Leave to File A Surreply (**# 192, 193**), as the Court sees nothing in the tendered surreply that would affect the reasoning herein.

The parties shall begin preparation of a proposed Pretrial Order in conformance with Docket # 73, and shall contact chambers to schedule a Pretrial Conference.

Dated this 19th day of March, 2018.

**BY THE COURT:**

Marcia S. Krieger
Chief United States District Judge